**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BENTON WILLIAMS, JR.,

       Plaintiff,

v.

EQUIFAX, INC.,

       Defendant.

Case No. 1:19-cv-622

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On July 26, 2019, Plaintiff, proceeding pro se, paid the requisite filing fee and filed the above-captioned case. For the reasons that follow, the undersigned now recommends that this case be DISMISSED *sua sponte* for lack of subject matter jurisdiction, or alternatively, for failure to state any claim.

**I.    Background**

Many pro se litigants seek to file their complaints *in forma pauperis*, or without payment of a filing fee. In such cases, Congress has authorized Courts to conduct an initial evaluation of the complaint prior to authorizing service on any defendant. *See* 28 U.S.C. § 1915(e). Because Plaintiff paid the full filing fee, his complaint is not subject to statutory *sua sponte* screening under § 1915(e).[1] Nevertheless, this Court retains the authority to dismiss frivolous lawsuits under *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.

---

[1] Because Plaintiff initiated this lawsuit by paying the requisite filing fee, Plaintiff himself must effectuate service upon the Defendants. Unsurprisingly given the recency of this lawsuit, the Defendant has not yet appeared.

1999).  Moreover, a federal court has the obligation to dismiss a lawsuit at any time that it determines it is without subject matter jurisdiction.

Federal courts are courts of limited jurisdiction.  In the complaint filed in this case, Plaintiff has invoked diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1 at 3).  Plaintiff alleges that he is a citizen of Ohio, and that the Defendant corporation is a citizen of Georgia.  (*Id.* at 4).  However, in order for diversity jurisdiction to arise under § 1332, the amount in controversy must exceed $75,000.   In the "Relief" section of his complaint, Plaintiff specifically seeks $75 million dollars in damages as monetary damages.

## II. Plaintiff's Complaint Should be Dismissed

### A. Failure to Plausibly Assert the Requisite Amount in Controversy

Generally, the amount in controversy alleged by a plaintiff in his complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. *See Klepper v. First Am. Bank,* 916 F.2d 337, 340 (6th Cir.1990). When determining whether the requisite amount in controversy has been satisfied, the complaint is examined at the time it was filed. *Id.*

Examining Plaintiff's complaint, the undersigned concludes that Plaintiff has failed, in good faith, to allege any plausible claim that would exceed $75,000.  In his "Statement of Claim," Plaintiff refers to "attached" exhibits, but generally alleges that Equifax "has willingly, knowingly, intentionally, or voluntarily agreed and acquiesced through its non-response to the facts stated in the Conditional Acceptance/Affidavits sent, and <u>is therefore in default under contract</u>.  Equifax has also admitted to the data breach which has affected and injured me personally."  (*Id.* at 4, emphasis added).  In the following section of his complaint setting forth his claim for relief, Plaintiff states:

> Plaintiff prays for relief as follows $75,000,000.000 agreed to and acquiesced…through the Plaintiff exhausting his private administrative remedy through proofs of claim, Equifax, Inc's subsequent non-response to the Notice of Fault and Opportunity to Cure and subsequent non-response and subsequent Default as a result of Equifax, Inc. willful failure to respond. Plaintiff also prays for triple damages, punitive damages and all court costs.

(*Id.* at 5). Plaintiff sets forth no basis for his claims other than alleging that the Defendant has failed to respond to prior "Notices" and/or demands made by Plaintiff for monetary damages, which Plaintiff appears (erroneously) to believe contractually bind Equifax to pay him $75 million dollars.

The exhibits attached as part of Plaintiff's complaint offer little to further illuminate the basis for any claim. The first exhibit is a letter from Plaintiff to the CEO of Equifax dated April 17, 2019, and bearing the caption: "Conditional Acceptance (CA) – Request for Proof of Claim as to the Liability of Equifax, Inc. for the Fraudulent Breach of the Personal Data of 148 Million Americans Including Myself, the undersigned, as Reported on September 8, 2017 by Equifax, Inc." (*Id.* at 7-8). In the April 2019 Conditional Acceptance of Claim letter, Plaintiff states that he is among the victims of the data breach reported by Equifax on September 8, 2017. Plaintiff asserts that he has been "personally, financially, socially and economically injured…in that I now DO NOT know who may have my personal data or where my data is being used as a result of the fraudulent data breach at Equifax, Inc. reported on September 8, 2017." (*Id.* at 7, capitalization original).

The second exhibit attached to Plaintiff's complaint is a similar letter from Plaintiff addressed to the CEO of Equifax, dated June 1, 2019. While bearing a similar caption to the first letter, "Re: Conditional Acceptance (CA) – Request for Proof of Claim…," the June letter contains a subheading captioned "Notice of Fault and Opportunity to Cure and Contest Acceptance." (*Id.* at 9). In the June letter, Plaintiff informs Equifax that because

3

it failed to respond to his first letter by providing numerous "proofs of claim," Equifax is "now in fault and …in agreement and have stipulated to the terms of the undersigned's dated presentment through your dishonor." (*Id.*) Plaintiff's letter further informs Equifax of its "right to cure" within ten days, following which Plaintiff expresses his intent to obtain a "final affidavit of certificate of non-response pursuant to and relative to UCC, State Statute, Federal Laws and otherwise." (*Id.*)

The third exhibit attached to Plaintiff's complaint, dated July 10, 2019, contains a similar caption: "Re: Conditional Acceptance (CA) – Request for Proof of Claim…," along with the description "Affidavit and Notice of Default," and appears to be a notarized Affidavit by the Plaintiff. (Doc. 1 at 10-14). The Affidavit begins with averments concerning Plaintiff's prior communication with Equifax, its alleged "non-response," its September 2017 report of the data breach, and statements concerning the U.S. General Accounting Office's report concerning the data breach. The Affidavit concludes with Plaintiff's averment that Equifax is liable "to me and each of the 148 Million Americans for damages no less than a minimum of $75,000,000 Seventy Five Million Dollars including triple and punitive damages and costs." (Doc. 1 at 11, ¶ 17).

Immediately following the Affidavit is a partial duplicate of the same, captioned simply "Affidavit of Non-Response." The additional affidavit avers that Plaintiff has not received any written response from Equifax to his April 17, 2019 or June 1, 2019 letters. (Doc. 1 at 14-15). The final two pages of Plaintiff's complaint/exhibits consist of various certified mail receipts addressed to Equifax and/or its CEO. (*Id.* at 16-17).

In another recent case filed by a pro se plaintiff involving similar allegations against Equifax over the same data breach incident, a Michigan district court dismissed the

complaint for lack of diversity jurisdiction after pointing out that Plaintiff had failed to set forth any specific claims in his amended complaint that would support his claim for damages of $75 million. *Mosley v. Equifax*, 2019 WL 2539349 (E.D. Mich. June 20, 2019). The undersigned finds the analysis of Judge Parker to be compelling, and recommends dismissal of the complaint in this case for the same reasons.

> [Plaintiff] does not identify any actual damages that he has suffered as a result of the alleged theft of his personal and financial information. There is no indication …that anyone has actually engaged in the unauthorized use of his information (for example, to obtain credit), that he incurred any burden and cost of heightened monitoring to protect his information from misuse, or that he incurred any actual loss as a result of the data breach. Even if Plaintiff can seek punitive damages for any claim he is pursuing against Defendant, such damages must bear some relationship to his actual damages.

*Id.* at *2 (citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)); *accord* Newton v. *Dominion Management Servs.*, 2014 WL 4322691 (N.D. Ohio Aug. 29, 2014) (dismissing pro se complaint for lack of subject matter jurisdiction, finding plaintiff had failed to state plausible claim for $2 million in damages for emotional distress for breach of contract or otherwise under Ohio law).

### B. Plaintiff's Complaint Fails to State Any Claim under Rule 8

For the same reasons, Plaintiff's complaint, as currently pleaded, also could be dismissed for failure to state any plausible claim. Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949

(2009) (citing *Twombly,* 550 U.S. at 556). The court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). Concerning this case, *pro se* complaints are held to a less rigorous standard than those drafted by attorneys, but the court is not required to discover or create a claim that is not pled. *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir.2011); *see also Johnson v. Fedex/Kinko's Store No. 1726*, 2012 WL 997006 at *2 (S.D. Ohio March 23, 2012) (holding that Plaintiff's citation to the U.C.C. failed to grant subject matter jurisdiction and did not support any claim).

### C. Judicial Notice of MDL No. 2800 – In Re: Equifax, Inc., Customer Data Security Breach Litigation

Although the undersigned recommends dismissal of this lawsuit based upon a lack of subject matter jurisdiction, and/or for failure to state any claim, the undersigned takes no position on whether or not Plaintiff could amend his complaint in a manner that would assert some type of claim. Indeed, the Court takes judicial notice of the existence of *In re Equifax, Inc. Customer Data Sec. Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga. Filed Dec. 6, 2017), a class action lawsuit brought by individuals who claim injury as a result of the same data breach. In order to promote the just and efficient conduct of the litigation, the Chair of the Judicial Panel on Multidistrict Litigation previously has issued transfer orders in other cases brought by individual consumers that more clearly assert some form of claim, including cases brought by pro se plaintiffs. *See, e.g.,*

6

*In re Equifax, Inc., Customer Data Security Breach Litigation*, 2018 WL 3770539 (Aug. 8, 2018). However, Equifax recently reached a settlement with the U.S. Federal Trade Commission concerning claims in that lawsuit. Details concerning the class action settlement, including but not limited to information about who is included as a class member, the relevant provisions of the settlement, how to obtain settlement benefits (if eligible), and/or how to "opt out" of the class in order to retain individual rights, are available at https://www.equifaxbreachsettlement.com/faq (accessed on August 2, 2019).

### III. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** this case be **DISMISSED** *sua sponte* based upon a lack of subject matter jurisdiction. In the alternative, the complaint should be dismissed for failure to state claim under *Iqbal* standards.

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BENTON WILLIAMS, JR.,

    Plaintiff,

  v.

EQUIFAX, INC.,

    Defendant.

Case No. 1:19-cv-622

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).